**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**ROBERT M. WHEELER,**

**Petitioner,**

**v.**

**JAMES CROSS,**

**Respondent.** **Case No. 12-cv-618-DRH-PMF**

**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

## I. Introduction

Before the Court is a Report and Recommendation (R&R) (Doc. 23) Magistrate Judge Philip M. Frazier issued pursuant to 28 U.S.C. § 636(b)(1)(B), FEDERAL RULE OF CIVIL PROCEDURE 72(b), and SOUTHERN DISTRICT OF ILLINOIS LOCAL RULE 72.1(a). Magistrate Judge Frazier recommends denial of petitioner Robert Wheeler's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1).

On March 7, 2013, the R&R was sent to the parties, with a notice informing them of their right to appeal through the filing of objections within fourteen days of service (Doc. 23-1). Wheeler filed timely objections (Doc. 26), to which respondent has responded at the Court's request (Doc. 30). Finally, Wheeler has replied to respondent's response (Doc. 31). Accordingly, the issues are fully briefed and ready for judicial resolution. The Court must undertake *de novo*

review of the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Govas v. Chalmers*, 965 F.2d 298. 301 (7th Cir. 1992). The Court may "accept, reject, or modify the recommended decision." *Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999) (citing FED. R. CIV. P. 72(b)). In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues for which the parties make specific objections. *Id.* However, the Court need not conduct a *de novo* review of the findings of the R&R for which no objections are made. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985). Instead, the Court can simply adopt these findings after review for clear error. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). For the reasons discussed herein, the Court **ADOPTS** the R&R's recommendation of denial.

## II. Background

The parties' dispute centers on the R&R's legal conclusions. Thus, the Court will not fully recite the factual or procedural background of Wheeler's underlying criminal conviction, direct appeal, 28 U.S.C. § 2255 motion, and Rule 60(b)(6) motion as it adopts the R&R's recitation.

In brief, on the morning of April 8, 1996, Wheeler's wife, Rhonda Wheeler (Rhonda), left her home in Highland Township, Michigan and drove a 1994 Gran Prix over an hour to her place of employment as a legal secretary in Toledo, Ohio. Around 5:00 p.m. that same day, Rhonda entered the 1994 Gran Prix to begin her drive home. Within seconds, an explosion occurred inside the vehicle. After

undergoing six major operations over the following nine days, Rhonda died from her injuries (Doc. 1, p. 27; Doc. 17-3, p. 4).

On February 5, 1997, Wheeler pleaded guilty to a six count indictment in the Northern District of Ohio (Doc. 17-2). Counts 1 and 3 charged that Wheeler "willfully, and with a reckless disregard for the safety of human life, did place and cause to be placed an explosive in" and "did damage, disable, and destroy" the 1994 Gran Prix, "which was being used, operated and employed in interstate commerce, thereby causing the death" of Rhonda, in violation of 18 U.S.C. § 33. Count 5 charged that Wheeler "maliciously damaged and destroyed, by means of fire and explosive materials" the 1994 Gran Prix "used in interstate commerce thereby directly and proximately causing the death of Rhonda," in violation of 18 U.S.C. § 844(i). Finally, Counts 2, 4, and 6 charged Wheeler with "knowingly using" a "destructive device, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States," in violation of 18 U.S.C. § 924(c), connected to Counts 1, 3, and 5, respectively (Doc. 17-1).

On June 11, 1997, the court sentenced Wheeler to life sentences on each count. The concurrent sentences on Counts 1, 3, and 5, were ordered to be served consecutively to the concurrent sentences on Counts 2, 4, and 6, and five years of supervised release (Doc. 1, pp. 29-30). Wheeler filed a timely direct appeal in the Sixth Circuit which affirmed his conviction and sentence. *United States v. Wheeler,* 168 F.3d 491, 1998 WL 808225 (6th Cir. 1998) (unpublished). On

February 22, 2000, Wheeler filed a § 2255 motion which the district court denied in September 2000. *Wheeler v. United States,* 00-cv-7112 (N.D. Ohio 2000).

## III. Law and Application

Wheeler moves the Court to vacate his convictions in light of *United States v. Jones,* 529 U.S. 848 (2000), decided on May 22, 2000, as he claims it renders him actually innocent of all charges. *Jones* answered the question of whether § 844(i) covers the arson of an owner-occupied private residence. § 844(i) provides,

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years. . . .

18 U.S.C. § 844(i). In *Jones,* the Supreme Court held that an owner-occupied home did not satisfy the interstate commerce requirement of § 844(i) where the building's only connection to interstate commerce was its receipt of natural gas from an out-of-state provider, policy coverage underwritten by an out-of-state insurance company, and use as collateral for a loan secured by an out-of-state bank. *Jones,* 529 U.S. at 850-51. The *Jones* Court emphasized that the qualifying words "used in" require that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce. The Supreme Court endorsed a two-part inquiry that looks first into the function of the property itself and then secondly determines whether that function affects interstate commerce. *Jones,* 529 U.S. at 854-55.

The R&R recommends denial of Wheeler's petition as his guilty plea stands as an admission that his conduct satisfied the statutory element of interstate commerce, and further, reasonable jurors could evaluate the use and character of the Gran Prix and conclude that there was a sufficient connection to interstate commerce. Wheeler objects to these findings.

**1. § 2241**

The Court will address the merits of the petition, as the only objections before the Court refer to the R&R's legal conclusion that Wheeler has not presented a substantive right to relief under § 2241. However, the Court notes that it does so with a certain degree of caution. In general, federal prisoners who wish to attack the validity of their convictions or sentences are required to proceed under § 2255. Further, in the overwhelming majority of cases, § 2255 specifically prohibits prisoners from circumventing § 2255 and challenging their convictions or sentences through a habeas petition under § 2241. However, § 2255 recognizes that it will not apply in a narrow class of cases. This is the so-called "savings clause" of § 2255, allowing prisoners to bring § 2241 petitions if they can show that the § 2255 remedy "is inadequate or ineffective to test the legality of [the prisoner's] detention." *See Garza v. Lappin*, 253 F.3d 918, 921 (7th Cir. 2001) (quoting 28 U.S.C. § 2255, ¶ 5, last clause).

The Seventh Circuit has explained § 2255 is "'inadequate or ineffective to test the legality of [the] detention' when a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence." *Taylor v.*

*Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *In re Davenport*, 147 F.3d 605, 611-12 (7th Cir. 1998). Thus, assuming petitioner has presented a claim of actual innocence capable of review under § 2241, Wheeler's claims require the Court to determine whether the 1994 Gran Prix was "used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," *see* 18 U.S.C. § 844(i), in light of *Jones*, which held an owner-occupied home did not satisfy § 844(i)'s requirement that it be "used," i.e., "actively employ[ed]," in interstate commerce. *Jones*, 529 U.S. at 855, 856.

In reliance on *United States v. Prevatte*, 300 F.3d 792 (7th Cir. 2002), respondent agrees with petitioner that he raises an actual innocence claim based upon *Jones* and thus his § 2241 petition is properly before this Court. The R&R is also in agreement. In *Prevatte*, Prevatte and confederates detonated a pipe bomb in an alley in Hammond, Indiana which damaged an adjacent house and garage, puncturing a gas meter. The Seventh Circuit was presented with a motion to recall mandate which it construed as a § 2241 petition. However, as Prevatte was incarcerated within Colorado, the court did not have jurisdiction to address the merits of his claim. The court addressed whether a petitioner convicted pre-*Jones* within the Seventh Circuit under § 844(i) presented a sufficiently meritorious claim of actual innocence in light of *Jones*' holding to merit transfer to the court which did have jurisdiction over his claim. *See Prevatte*, 300 F.3d at 799.

Similarly to Wheeler, Prevatte was convicted under § 844(i). Again similarly to Wheeler, subsequent to Prevatte's conviction and the initial filing of his § 2255 motion, the Supreme Court handed down *Jones*. *Jones* overruled previous Seventh Circuit precedent, as it interpreted § 844(i) not to cover owner-occupied private dwellings because these structures are not "used" in interstate commerce as Congress employed that term. *Cf. United States v. Stillwell*, 900 F.2d 1104, 1107-08 (7th Cir. 1990) (holding in prosecution under § 844(i) that commerce nexus is satisfied where private residence serves no business purpose but receives natural gas from out of state); *see also United States v. Martin*, 63 F.3d 1422, 1426-27 (7th Cir. 1995) (holding in prosecution under § 844(i) that vacant apartment building withdrawn from rental market was still "used" in interstate commerce).

Prevatte argued that *Jones* rendered him actually innocent because the only interstate connection established at his trial was the injury to a home that received interstate natural gas. The Seventh Circuit found Prevatte's claim could not be considered frivolous under the requirements of *In re Davenport*. *Prevatte,* 300 F.3d at 799. In a case also cited by respondent, the Sixth Circuit has made a similar finding concerning a § 2241 petitioner convicted pursuant to § 844(i) under similar circumstances who was also subject to pre-*Jones* Seventh Circuit precedent. *See Martin v. Perez,* 319 F.3d 799, 805 (6th Cir. 2003)(*Martin I*).

Given that Wheeler's circuit of conviction was the Sixth Circuit, in light of the specific circumstances of the case at hand, and due to *Jones'* narrow holding,

it is not clear to this Court that Wheeler's current argument that the Gran Prix was "not used in commerce or in an activity affecting commerce" as Congress meant that term was foreclosed from him by binding precedent on direct appeal or in his first § 2255 motion. *See Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012); *Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007). However, respondent feels Wheeler has met the requirements of *In re Davenport*, 147 F.3d at 611-12, the R&R is in agreement, Wheeler of course does not object, and the Court finds that Wheeler's petition would fail even if his claims were properly before the Court. Although the Court feels the issue is not as clear-cut as the parties and R&R would lead it to believe, in reviewing the R&R's recommendation that Wheeler has presented a claim that is properly construed as a § 2241 for clear error, the Court will accordingly address the substance of the objections.

**2. Objections**

Wheeler objects to the R&R's findings, arguing he can collaterally attack his plea and that he has presented a claim of actual innocence which requires that this Court vacate his convictions. At Wheeler's change of plea hearing, the presiding judge defined certain terms listed in the counts against Wheeler. The district court defined "interstate commerce" as "travel, trade, traffic, commerce or transportation between the several states and, of course, would include travel, transportation between Michigan and Ohio" (Doc. 17-2, p. 16). The district court then asked Wheeler what he had done to warrant criminal charges. Wheeler stated, "I put the explosive device in the car, my wife went to Ohio, and, well,

things didn't go how I planned, but, she got back in the car and [the] car exploded" (Doc. 17-2, p. 22). Further, Wheeler agreed that if he had gone to trial the evidence would demonstrate that:

> [O]n the morning of April 8, 1996, Rhonda Wheeler was a resident of Michigan, traveled from her home to her place of employment, here in Toledo, which was Austin Associates. At the time she traveled from Michigan to Ohio, later learned a pipe bomb had been placed under the front driver's seat of the vehicle. After she completed work that day, approximately 5 o'clock in the afternoon, she re-entered the vehicle, attempted to start the vehicle and the vehicle exploded, causing serious life threatening injuries. After undergoing several operations over the next several days, Miss Wheeler expired on April 17, as a direct result of the explosion. . . . Mr. Wheeler made admissions indicating . . . that he had, in fact, placed the destructive device in the vehicle.

(Doc. 17-2, pp. 22-25). Thereafter, Wheeler pleaded guilty to all six counts (Doc. 17-2, p. 27). The district court then accepted Wheeler's plea, finding it was "knowing and voluntary, supported by an independent basis in fact, containing each of the essential elements of each offense" (Doc. 17-2, p. 27).

In reliance on *United States v. Dean,* 705 F.3d 745 (7th Cir. 2013), and *United States v. Martin,* 147 F.3d 529, 533 (7th Cir. 1998) (finding on direct appeal that the defendants' pleas of guilty waived any challenge to the application of the statutory elements to their conduct), the R&R finds that Wheeler's guilty plea stands as an admission that his conduct satisfied the statutory element of interstate commerce and that he has thus waived his instant challenge.

Wheeler objects to this finding and argues that the principles of *Bousley v. United States,* 523 U.S. 614 (1998), allow him to collaterally attack the factual basis of his plea. The § 2255 movant in *Bousley* had pled guilty to an 18 U.S.C. §

924(c)(1) offense of "using" a firearm during or in relation to a drug trafficking crime. Bousley appealed his sentence, but did not challenge the validity of his guilty plea. Subsequently, he filed a motion for habeas corpus relief challenging the connection between the firearm and his drug-trafficking. The district court summarily dismissed this motion, acting on the magistrate judge's recommendation. Bousley appealed this dismissal.

While his appeal was pending, the Supreme Court issued a decision that interpreted 18 U.S.C. § 924(c)(1), holding that a defendant is not subject to § 924(c)(1) prosecution for only having a firearm in the proximity of drugs or drug proceeds or for placing the firearm in a position to embolden or to provide a sense of security, as the government was required to show "active employment of the firearm." *See Bailey v. United States*, 516 U.S. 137, 149–50 (1995); *see also Bousley*, 523 U.S. at 617 (describing its holding in *Bailey* ). Bousley argued *Bailey* should be applied retroactively, his plea was involuntary, he was misinformed about the elements of § 924(c)(1), and his guilty plea did not act as a waiver of his claim. Thus, the *Bousley* Court granted cert to "resolve a split among the Circuits over the permissibility of post-*Bailey* collateral attacks on § 924(c)(1) convictions obtained pursuant to guilty pleas." *Bousley*, 523 U.S. at 618.

The *Bousley* Court reasoned that if the criminal defendant, his counsel, and the court did not "correctly under[stand] the essential elements of the crime with which [the defendant] was charged," the plea would be "constitutionally

invalid." *Id.* at 618–19. This is because a constitutionally valid plea must be voluntary and intelligent. *Id.* at 618 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)). The *Bousley* Court addressed the "significant procedural hurdles" standing in a habeas petitioner's path to collaterally attacking a guilty plea. It observed that Bousley had procedurally defaulted his claim because a direct appeal challenging the voluntariness and intelligence of a guilty plea is a prerequisite to bringing such a challenge in a collateral proceeding. *Id.* It then identified the only avenues left to such procedurally defaulted habeas petitioners: "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent."' *Id.* at 622 (citations omitted).

The *Bousley* Court noted that a procedurally-defaulted petitioner can establish actual innocence by demonstrating that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (quoting *Schulp v. Delo,* 513 U.S. 298, 327–28 (1995) (internal quotations omitted)). The *Bousley* Court reversed and remanded for an evidentiary hearing. It instructed that if Bousley was to be permitted to proceed with his habeas review on the merits, he must make a showing of actual innocence, that is, "that he did not 'use' a firearm as that term is defined in *Bailey.*" *Id.* at 623–24.

At Wheeler's change of plea, he agreed that the evidence would show that on the day the Gran Prix exploded, Rhonda traveled in the Gran Prix from Michigan,

her state of residency, to Ohio, her state of employment. Wheeler pleaded guilty to "maliciously damag[ing] and destroy[ing], by means of fire and explosive materials" the 1994 Gran Prix which was "used in interstate commerce thereby directly and proximately causing the death of Rhonda," in violation of 18 U.S.C. § 844(i).

Even if this Court were to assume that the principles of *Bousley* allow Wheeler to collaterally attack his plea, he would still have to demonstrate his actual innocence to obtain relief. *See Martin v. Perez,* 391 F.3d 799, 802 (6th Cir. 2004) (*Martin II*). To establish he is actually innocent, Wheeler "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (quoting *Bousley,* 523 U.S. at 623). In evaluating whether Wheeler has presented a viable claim of actual innocence in light of *Jones'* holding, the Court can consider all of the available evidence, not just the indictment or transcripts from Wheeler's change of plea and sentencing. *Id.*

Interestingly, Wheeler relies most heavily on *United States v. Monholland,* 607 F.2d 1311 (10th Cir. 1979), in arguing *Jones*' holding from the year 2000 renders his plea from 1997 invalid and thus him actually innocent. In *Monholland,* the defendants were jointly indicted in the Eastern District of Oklahoma for conspiring to destroy a State District Judge's pickup truck, which was used regularly and as a part of an activity affecting interstate commerce, in violation of § 844(i). The State District Judge at issue served a five-county judicial district. He customarily presided over family law disputes, cases involving parties

and interests in other states, problems connected with fugitives and flight warrants, possession of stolen property, and traffic offenses involving vehicles from other states. He drove his pickup truck between his residence and the courthouse within Oklahoma. "He [did] not, of course, drive the truck interstate." *Id.* at 1314. Thus, the court described the issue before it as, "whether the handling of cases dealing with parties from other states caused the pickup truck in question (which was used to drive from home to court) to be used in interstate or foreign commerce or any activity affecting interstate or foreign commerce." *Id.* at 314-15.

In reversing the convictions, the Tenth Circuit noted:

> The evidence here is that the function of the truck is to get the judge back and forth, and if the truck fails he would find some other means to accomplish the trip. We say, then, that the truck is wholly immaterial as far as any commerce is concerned even if we assume that there is a commerce quality about what the judge does after he gets to court. It is not at all clear that what he does even resembles commerce. Accordingly, it is impossible to say that the truck affects commerce. Since it is divorced from the activity carried on in court, there is no legal relationship whereby one can say that the truck affects commerce. To so hold is to recognize as interstate commerce something less than what is De minimis. Our view has to be that, in law, the activity of the judge at the courthouse is remote from the use of the truck. The truck does not enter into the administration of justice in the slightest degree.

*Id.* at 1316.

Additionally, Wheeler cites *United States v. Montgomery,* 815 F. Supp. 7 (D.D.C. 1993), in which a private residence and van inside the garage were found insufficiently connected to interstate commerce under § 844(i) to support a charge arising from the defendant's burning of the home. A judge and his wife owned the

home. The court found the judge was not engaged in any activity affecting interstate commerce, substantial or otherwise, when the home and van were burned. Only a small portion of the wife's nursing training occurred in the home. The van's primary use was for occasional shopping trips in the Washington, D.C., suburbs and one trip to a nursing seminar in Virginia. Thus, the district court dismissed the charges under § 844(i). *Id.* at 11.

Again, the mere fact that Wheeler relies on a Tenth Circuit opinion from 1979 and a district court decision from 1993 (which is of course not binding in this district or any other), both obviously pre-dating Wheeler's plea, direct appeal, § 2255 motion, and *Jones,* requires the Court to reiterate that Wheeler has not demonstrated that his current argument was foreclosed from him on direct appeal or in his first § 2255 motion.[1] As Wheeler notes, *Jones* cited *Monholland* for its proposition that § 844(i) does not indicate that Congress intended to include "everybody and everything." *Jones,* 529 U.S. at 857 (citing *Monholland,* 607 F.3d at 1316). It does not appear that *Jones* altered the holding of *Monholland* in any way.

Regardless, Wheeler's case is factually distinguishable from *Monholland* and *Montgomery* even in light of the analytical framework endorsed in *Jones.* Under the analysis discussed in *Jones*, the Court first considers the function of the vehicle. It will then consider if, in light of all the evidence, it is more likely

[1] The Court notes Wheeler also relies on *Waucaush v. United States,* 380 F.3d 251 (6th Cir. 2004), which found a § 2255 petitioner's guilty plea to conspiring to violate RICO was not voluntary and intelligent in light of the later holdings of *United States v. Morrison,* 529 U.S. 598 (2000) and *Jones*, 529 U.S. 848. The Court finds the reasoning of *Waucaush* is not directly applicable to the claims before it, given the factual discrepancies and differing statues under which Waucaush and Wheeler were convicted.

than not that no reasonable juror would have found the vehicle's function affects interstate commerce.

The facts established at Wheeler's change of plea demonstrate that on the day the Gran Prix exploded with Rhonda inside, she drove the vehicle from her residence in Michigan to her employment in Ohio. Wheeler argues that the facts only establish that she drove between these two states, to earn money, on *one* day. Without commenting as to whether this is a relevant distinction to make, the Court notes that Wheeler has attached a portion of his presentence investigation report (PSR) to his petition which states, "Rhonda[] was employed as a legal secretary by Austin and Associates in Toledo and had worked five or six days in 1995 and three days in 1996." It further states the Gran Prix was Wheeler's "wife's automobile" (Doc. 1, p. 28). Thus, the record before this Court establishes at a minimum that Rhonda drove from her residence in Michigan to her place of employment in Ohio on eight separate occasions; of course most importantly on the day the Gran Prix blew up. Thus, the Gran Prix functioned as Rhonda's interstate transportation between Michigan and her place of employment in Ohio on the day the vehicle exploded. This "use" clearly constitutes "active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Jones,* 529 U.S. at 849.

Having considered the vehicle's function, the Court will now consider whether that function affects interstate commerce, a step it does not appear *Jones* directly reached. In this case, the vehicle transported Rhonda interstate to make

money in Ohio that she would then bring back to Michigan, her state of residency, on the relevant day. To this Court, it seems readily apparent that this use affects interstate commerce, as the vehicle transported Rhonda interstate to earn money.

The fact the vehicle transported Rhonda to her employment in a different state than that of her residency on the day the vehicle blew up clearly distinguishes this case from the facts of *Monholland* and *Montgomery*. In *Monholland,* the judge's role in cases involving subjects from different states provided the only interstate nexus. In *Montgomery,* the fact a minor portion of the wife's nursing preparation occurred inside the home, in addition to the van's one-time trip to Virginia, provided the primary interstate nexus. Instantly, the Gran Prix itself provides the interstate nexus as it was "used" to transport Rhonda interstate to earn money on the day it exploded. Despite Wheeler's argument to the contrary, the Court's finding here does not mean that the arson of nearly every vehicle would be within § 844(i)'s reach. The Court merely finds that Wheeler has not demonstrated that in light of all the evidence, including the Gran Prix's use as interstate transportation between Rhonda's state of residence and her state of employment on the day in question, it is more likely than not that no reasonable juror would have found the Gran Prix was used in interstate commerce or in an activity affecting interstate commerce under the framework of *Jones*. Thus, the Court **ADOPTS** the R&R's recommendation that the Court **DENY** Wheeler's petition. The Court notes that a certificate of appealability is not required in the

event Wheeler appeals this Order. *See Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).[2]

## IV. Conclusion

For the reasons discussed herein, the Court **ADOPTS** the R&R's recommendation of denial (Doc. 23) over Wheeler's objections (Doc. 26). Thus, Wheeler's § 2241 habeas petition (Doc. 1) is **DENIED**. Accordingly, Wheeler's claims are hereby **DISMISSED with prejudice.** The Clerk is instructed to close the file and enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 31st day of May, 2013.

David R. Herndon
2013.05.31
17:03:07 -05'00'

**Chief Judge**
**United States District Court**

[2] The Court notes that because it does not feel *Jones* requires the Court to vacate Wheeler's conviction under § 844(i), it does not address his argument that *Jones* requires the Court to vacate his convictions under 18 U.S.C. §§ 33 and 924(c)